# ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA  2010 MAY 26  PM 3:54

DUBLIN DIVISION

| | |
|---|---|
| VICKI L. WOOTEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

CV 309-023

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Vicki L. Wooten ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") payments under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

## I. BACKGROUND

Based on claims of disability dating back to February 15, 2002, Plaintiff filed for SSI and DIB on September 16, 2003. Tr. ("R."), pp. 25, 537. Her application was denied initially and on reconsideration. R. 25-26, 28. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on May 12, 2006. R. 36, 558-602. At

the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, as well as a Vocational Expert ("VE"). R. 559. On August 25, 2006, the ALJ issued an unfavorable decision. R. 12-21. Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since February 15, 2002, the alleged onset date (20 C.F.R. §§ 404.1520(b), 404.1571 *et seq*., 416.920(b), and 416.971 *et seq*.).

2. The claimant has the following severe impairments: obesity, right shoulder rotator cuff repair, asthma/allergies, and depression (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

4. The claimant has the following residual functional capacity ("RFC"): She is limited to performing medium exertional work activities[1] that never require her to climb ladders, ropes, or scaffolding because of her obesity. She can individually stoop and reach overhead for no more than 2 ½ hours during an eight-hour work day because of her combined obesity and shoulder impingement. She should avoid concentrated exposure to extreme heat/cold and environmental irritants/pollutants because of her asthma and allergies.

   The claimant is limited to performing work activities with an SVP[2] no greater than her past relevant work. While her concentration may drift from 0-2 ½ hours during an eight-hour workday if the work is

[1]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§ 404.1567(c) and 416.967(c).

[2]"SVP" stands for "specific vocational preparation" and refers to the time it takes an individual to develop the facility for average performance of a specific job. See 20 C.F.R. §§ 404.1568 & 416.968.

repetitive, routine, or boring because of her depression, she can pay enough attention to details to accomplish all assigned tasks within the same workday. Even though her pace might be disrupted once or twice a week, she will still be able to perform all assigned tasks by the end of the same workday. Her social interaction with large numbers of the public and supervisors should be limited to no more than 2 ½ hours during an eight-hour work day although she can work in close proximity with them throughout the entire workday. She should avoid constantly changing work environments that could increase the usual stress levels of work.

The claimant is capable of performing past relevant work as a cake decorator and donut icer/donut fry cook helper, which does not require the performance of work-related activities precluded by the claimant's RFC (20 C.F.R. §§ 404.1565 and 416.965).

R. 15-21. Because the ALJ determined that Plaintiff had the ability to perform past relevant work, the sequential evaluation process stopped, see 20 C.F.R. §§ 404.1520(a)(4)(iv) and 416.920(a)(4)(iv), and the ALJ concluded that Plaintiff was not "under a 'disability,' as defined in the Social Security Act, from February 15, 2002 through the date of this decision." R. 22 (citing 20 C.F.R. §§ 404.1520(f) and 416.920(f)).

When the Appeals Council ("AC") denied Plaintiff's request for review, the Commissioner's decision was "final" for the purpose of judicial review under 42 U.S.C. § 405(g). Having failed to convince the AC to review her case, Plaintiff filed the current civil action in the United States District Court for the Southern District of Georgia, requesting a reversal or remand of the adverse decision. Specifically, Plaintiff contends that the ALJ erred by (1) rejecting the opinion of her treating psychiatrist, Dr. Louis Jacobs, (2) failing to find that her arthritis and lumbar degenerative disc disease were not severe impairments, and (3) failing to properly consider the effects of her obesity. (See generally doc. no. 10) (hereinafter "Pl.'s Br.").

3

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary

evidence is not based upon substantial evidence. <u>McCruter v. Bowen</u>, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. <u>Wiggins v. Schweiker</u>, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. Treating Physician's Opinion

Plaintiff first argues that the ALJ erred in rejecting the opinion of Dr. Louis Jacobs, her treating psychiatrist. Specifically, Plaintiff takes issue with the ALJ's rejection of Dr. Jacobs' opinion as stated in a Mental Impairment Questionnaire ("the Questionnaire") completed in May 2006. In the Questionnaire, Dr. Jacobs opined that Plaintiff lacked coping skills for stress and depression, lacked social skills, and lacked the ability to concentrate. R. 534. He further noted that Plaintiff had a complete inability to function independently outside her home. R. 535. In rejecting this opinion, the ALJ found as follows:

> The undersigned gives no evidentiary weight to Dr. Jacobs' medical opinion because it is inconsistent with the objective evidence. Further, it is contradictory to Dr. Jacobs' own treating records. As indicated in the record, Dr. Jacobs noted the claimant's condition was stable on her medical regimen throughout her treatment. In February 2006, Dr. Jacobs did note the claimant's condition had regressed some, but he also indicated that she was not taking her medications as prescribed to get the full antidepressant effect.

5

The record also indicates the claimant reported initially in 2003 that she had been afraid of being around large groups of people since her childhood. However, by 2004, the claimant reported she did not get nervous as often around large crowds. Further, the records indicate in 2005 [that] the claimant reported doing some community service work, as well as volunteer work. Accordingly, the undersigned finds Dr. Jacobs has provided no substantial evidence to support his medical opinion.

R. 18.

With that background in mind, the Court turns to the standards used to evaluate a treating physician's opinion. It is well-settled in the Eleventh Circuit that a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986). That having been said, the Commissioner is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991). Finally, under Social Security Ruling ("SSR") 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating source opinions on issues reserved to the

6

Commissioner are never entitled to controlling weight or special significance. SSR 96-5p; see also 20 C.F.R. §§ 404.1527(e) and 416.927(e).

Here, the Court determines that the ALJ's decision to reject Dr. Jacobs' opinion is supported by the substantial evidence. As noted above, the ALJ rejected Dr. Jacobs' opinion for two reasons: (1) because it was inconsistent with other objective evidence, and (2) because it was inconsistent with Dr. Jacobs' own records. As to the first reason, Plaintiff appears to take issue with the fact that in the paragraph in the ALJ's opinion setting forth his reasons for rejecting Dr. Jacobs' opinion, the ALJ does not detail any specific "objective evidence." However, this argument ignores the fact that in his discussion of Plaintiff's medical history, the ALJ noted that in 2003, Plaintiff was given a Global Assessment of Function ("GAF") score of 59[3] by Dr. John C. Whitley, III. R. 17, 462. The ALJ also discussed the fact that during a consultative examination in 2005, Plaintiff had reported to Dr. Vasudev Kulkarni that she was independent in activities of daily living. R. 16, 471. As indicated in various forms completed by Plaintiff after she filed for DIB and SSI, these activities include washing dishes, doing laundry, and shopping with her mother, all of which were discussed by the ALJ. R. 20, 110-11, 171, 201. The ALJ also took note of Plaintiff's statements that she takes care of her pet bird and attends group therapy three times a week. R. 20, 109, 112, 582. Thus, while the ALJ did not specifically refer to this evidence in the

---

[3]Although Plaintiff's this GAF score is suggestive of some mental impairment, courts have held that even lower GAF scores are not indicative of severe impairment. See Henson v. Barnhart, 373 F. Supp. 2d 674, 681-83 (E.D. Tex. 2005) (diagnosis of "major depression" and GAF score of 50 did not preclude ALJ from finding no severe impairment); Deford v. Barnhart, 347 F. Supp. 2d 1174, 1180-81 (M.D. Ala. 2004) (GAF score of 50 not suggestive of severe mental impairment). Furthermore, as noted below, Plaintiff's GAF score had markedly improved to 65 in 2005. R. 17, 271.

portion of his decision setting forth his reasons for rejecting Dr. Jacobs' opinion, the ALJ's discussion of this evidence throughout his opinion demonstrates that his decision to reject Dr. Jacobs' opinion because it was inconsistent with other objective evidence is supported by substantial evidence.

Of course, the ALJ also stated that he had rejected Dr. Jacobs' opinion because he found that it was inconsistent with Dr. Jacobs' own treatment records. R. 18. Indeed, the ALJ specifically pointed out that although Dr. Jacobs had opined that Plaintiff lacked social skills and was completely unable to function independently outside her home, she reported doing community service and volunteer work in 2005. R. 18, 271-73, 534. Furthermore, although Dr. Jacobs opined that Plaintiff lacked coping skills to deal with stress and her depression, his treatment notes indicated that Plaintiff was stable while she was on her medication regimen and that any regression was due to Plaintiff not taking her medications as prescribed. R. 18, 269, 534.

Plaintiff appears to take issue with the ALJ's citation to what she terms "selective portions" of Dr. Jacobs' records in the paragraph setting forth his reasons for rejecting Dr. Jacobs' opinion. (Pl.'s Br., pp. 8-9). However, on the preceding page of his opinion, the ALJ spent two substantial paragraphs discussing Plaintiff's lengthy treatment history at the Community Mental Health Center ("CMHC") from 2003 through 2006, where Dr. Jacobs worked. Indeed, the ALJ took note of the fact that when Plaintiff initially began treatment at the CMHC, she denied any suicidal or homicidal ideations, hallucinations, or delusions, and her initial GAF score was 51. R. 17, 306-08. The ALJ also noted that in 2003, the records indicated that Plaintiff was showing improvement in her depression. R. 17, 272-74,

8

298. The ALJ also discussed the fact that, in 2005, Plaintiff was alert and oriented and had logical, relevant, and coherent thoughts. R. 17, 271-73, 276-77, 280, 284-85, 287, 292-94, 297-99, 301-02, 304. Her mood and affect were also good, and she denied any major mood swings or depressive elements. R. 17, 272-73, 284, 298, 304. In November 2005, Plaintiff's GAF score was markedly improved, measuring at 65. R. 17, 271. The Court acknowledges that the ALJ did not specifically refer to Dr. Jacobs by name in his earlier discussion of Plaintiff's treatment at the CMHC; rather, the ALJ referenced Dr. Jacobs' treatment notes in terms of exhibits. That said, the ALJ's discussion of Plaintiff's treatment history at CMHC where she was treated by Dr. Jacobs indicates that the ALJ gave a more thorough consideration to Dr. Jacobs' treatment notes (and their inconsistency with his opinion in the Questionnaire) than Plaintiff's argument suggests.

Accordingly, it cannot be said that the ALJ erred in rejecting Dr. Jacobs' opinion. Indeed, Dr. Jacobs' opinion that Plaintiff lacked coping skills to deal with stress and depression is undermined by his treatment notes indicating that, *inter alia*, Plaintiff was alert and coherent on several visits and that her symptoms improved and stabilized while she was on her prescribed medication regimen. R. 269, 271-73, 534. Furthermore, Dr. Jacobs' opinion that Plaintiff was completely unable to function outside her home is contradicted by Plaintiff's reports to him that she was doing some community service and volunteer work. R. 271-73, 534. Other objective evidence, including the GAF scores given by other physicians and Dr. Jacobs, as well as Plaintiff's self-reported activities of daily living, are also inconsistent with Dr. Jacobs' opinion. As noted above, the ALJ may properly discount the opinion of a treating physician if it is unsupported by objective medical evidence, is

9

merely conclusory, or is inconsistent with the physician's medical records. Lewis, 125 F.3d at 1440; Edwards, 937 F.2d at 583-84. As Dr. Jacobs' opinion was unsupported by objective evidence and inconsistent with his own treatment notes, the Court finds that ALJ's decision to reject Dr. Jacobs' opinion is supported by substantial evidence.[4]

Of course, the Court is aware of Plaintiff's argument concerning the affidavit that was given by Dr. Jacobs after he reviewed the ALJ's unfavorable decision and that was submitted to the AC in support of Plaintiff's request for review. In his affidavit, Dr. Jacobs states, *inter alia*, that Plaintiff has extreme difficulties in maintaining social functioning and that in his opinion, "[s]he is not able to function now and so far we have not been able to help her become functional . . . ." (Pl.'s Br., pp. 9-10). Dr. Jacobs also stated that he would "never want her to go into full time work." (Id. at 11). Although Plaintiff points to this affidavit in support of her argument that the ALJ improperly rejected Dr. Jacob's opinion, as noted above, this affidavit could not have been considered by the ALJ because it was given after the ALJ rendered his decision. Rather, it was only considered by the AC, (see Pl.'s Br., p.

---

[4]To the extent Plaintiff argues that the ALJ erred because he did not properly consider Dr. Jacobs' specialty and treatment relationship with Plaintiff, as required by 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2), the Court notes that the ALJ did recognize Dr. Jacobs' specialty by referring to him as Plaintiff's "treating psychiatrist" in his opinion. R. 18. The ALJ also recognized his treatment relationship with Plaintiff in detailing the contents of Dr. Jacob's treatment notes from 2003 through 2006. R. 17-18. Thus, it cannot be said that the ALJ failed to consider these factors in deciding to reject Dr. Jacobs' opinion. That said, other courts have found that an ALJ may properly decide to give less weight to a treating physician's opinion if it is unsupported by the record or inconsistent with other evidence in the record, even though the "specialization" and "length of treatment" factors may weigh in favor of the opinion. See Coggon v. Barnhart, 354 F. Supp. 40, 56 (D. Mass. 2005).

8 n.1),[5] and, as noted above, the AC denied Plaintiff's request for review. R. 3-6.

Previously, when presented with new evidence that was submitted to the AC, a reviewing court could only consider whether the new evidence necessitated remand under sentence six of § 405(g); it could not consider the new evidence in determining whether the Commissioner's final decision was supported by substantial evidence. Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998); Keeton v. Department of Health and Human Servs., 21 F.3d 1064, 1068 (11th Cir. 1994). Under that standard, a reviewing court could remand a case for consideration of new evidence only if the evidence was material and only if good cause existed for the claimant's failure to submit the evidence at the prior administrative proceeding. 42 U.S.C. § 405(g).

However, the Eleventh Circuit has attempted to clarify the analysis of Social Security cases where the plaintiff requests review of the ALJ's decision based on new evidence submitted to the AC, and the AC denies that request after reviewing the evidence. In Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253 (11th Cir. 2007), the Eleventh Circuit concluded that a sentence six remand is only proper "when new material evidence that was not incorporated into the administrative record for good cause" and "not presented to the Commissioner at any stage of the administrative process" is submitted to the district court. Id. at 1267 (citations omitted). The court went on to find that "evidence properly presented

---

[5]While Dr. Jacobs' affidavit does not appear in the record, it is referenced in the brief submitted by Plaintiff's counsel to the AC, which the AC acknowledged it had considered in denying Plaintiff's request for review. R. 6, 555-57. While Plaintiff states that this affidavit is attached to her brief, no such affidavit is attached. (Pl.'s Br., p. 8 n.1). That said, Plaintiff's brief recites the contents of Dr. Jacobs' affidavit, which the Commissioner has not disputed. (See id. at 9-12).

to the Appeals Council has been considered by the Commissioner and is part of the administrative record." Id. at 1269. Thus, such evidence "can be the basis for only a sentence four remand, not a sentence six remand." Id. (citations omitted); see also Couch v. Astrue, 267 Fed. App'x 853, 857-58 (11th Cir. 2008) (finding that district court did not err in refusing to remand under sentence six because the evidence was not new evidence that the Commissioner failed to incorporate into the record). In sum, where a claimant properly presents new evidence for consideration by the AC and the AC denies the request for review after considering the new evidence submitted, the "substantial evidence" standard required by sentence four applies, and the Court must determine whether the new evidence demonstrates that the denial of benefits is erroneous because the decision is no longer supported by substantial evidence.

Plaintiff states in her brief that she supplied Dr. Jacobs' affidavit because, after review of the ALJ's unfavorable decision, he felt very strongly that he needed to provide "a detailed statement reaffirming his assessments and the limitations of [Plaintiff]." (Pl.'s Br., p. 9). As noted above, in his affidavit, Dr. Jacobs states, *inter alia*, that Plaintiff has extreme difficulties in maintaining social functioning and that in his opinion, "[s]he is not able to function now and so far we have not been able to help her become functional . . . ." (Id. at 9-10). Dr. Jacobs also stated that he would "never want her to go into full time work." (Id. at 11).

That said, the Court notes that the AC "must consider new, material, and chronologically relevant evidence and must review the case if the ALJ's action, findings, or conclusion is contrary to the weight of the evidence currently of record." Ingram, 496 F.3d

12

at 1261. As the Commissioner correctly points out, Dr. Jacobs' affidavit is cumulative of his opinions contained in the Questionnaire. Plaintiff also admits as much when she states that Dr. Jacobs wanted to submit a statement "reaffirming" his prior assessment of Plaintiff. (Pl.'s Br., p. 9). Thus, the Court concludes that Dr. Jacobs' affidavit is not new evidence that the AC was obligated to consider. However, even assuming *arguendo* that Dr. Jacobs' opinion is "new" in the sense that it was not in existence when the ALJ issued his decision, the Court finds that it is not material, and thus it does not change the fact that the ALJ's decision to reject Dr. Jacobs' opinion is supported by substantial evidence. Indeed, in addition to the fact that the affidavit is cumulative of the prior opinions contained in the Questionnaire, Dr. Jacobs does not reference any new medical evidence, such as psychological assessments or tests, in his affidavit that would provide the necessary support for his opinion. Accordingly, the Court concludes that Dr. Jacobs' affidavit, which is cumulative of his prior opinions and does not reference any new medical evidence, does not render the ALJ's conclusions and findings contrary to the weight of the evidence. Therefore, this argument fails to provide a basis for remand.

**B.      Severity of Plaintiff's Arthritis and Lumbar Degenerative Disc Disease**

Plaintiff also argues that the ALJ erred in failing to find that her arthritis and lumbar degenerative disc disease were severe impairments. A severe impairment is one which significantly limits one's ability to perform "basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a) ("Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes

13

necessary to do most jobs." 20 C.F.R. §§ 404.1521(b) & 416.921(b). Examples include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2) Capacities for seeing, hearing, and speaking;
(3) Understanding, carrying out, and remembering simple instructions;
(4) Use of judgment;
(5) Responding appropriately to supervision, co-workers and usual work situations; and
(6) Dealing with changes in a routine work setting.

Id.

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that her problems significantly affect her ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (per curiam). At the second step of the sequential evaluation process,

If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. §§ 404.1520(c) & 416.1520(c). However, the severity test at step two of the sequential process is designed to screen out only clearly groundless claims. Stratton v. Bowen, 827 F.2d 1447, 1452 (11th Cir. 1987) (citing Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985), for the proposition that the severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working").

In fact, the Eleventh Circuit describes step-two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (per curiam) (citing Brady, 724 F.2d

914). Under this test,

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild," id., and "the claimant need only show that an abnormality's effect is not so minimal that it would not interfere with his ability to work irrespective of age, education, or work experience." Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) (per curiam).

With respect to Plaintiff's argument regarding arthritis, the ALJ noted that Plaintiff had reported symptoms of arthritis in 2002 to Dr. Kulkarni during a consultative examination, but Dr. Kulkarni did not diagnose Plaintiff with arthritis after x-rays were performed. R. 15-16, 470-72. Although not discussed by the ALJ, the only other reference in the record to any arthritic condition are Dr. James Giannini's notes that Plaintiff had difficulty moving her elbows, shoulders, and fingers, which was consistent with arthritis of an unknown type. R. 281. However, Dr. Giannini specifically noted that it still had to be determined whether arthritis was the cause of these problems, R. 281, and there is no evidence in the record to suggest that this determination was ever made.

As to Plaintiff's argument regarding lumbar degenerative disc disease, the ALJ discussed the fact that in 2002, x-rays of Plaintiff's spine performed by Dr. Kulkarni in conjunction with his consultative examination showed only "mild" degenerative changes and

15

normal disc spaces. R. 15-16, 470-72. A second consultative examination with Dr. Kulkarni in 2005 showed some restrictions on Plaintiff's lumbar spine due to her obesity but was otherwise unremarkable. R. 16, 448. Furthermore, Plaintiff had a full range of movement in her upper and lower extremities and a normal gait. R. 16, 447. Notably, however, Dr. Kulkarni did not include lumbar degenerative disc disease as one of Plaintiff's diagnoses after performing either of the consultative examinations. R. 448, 472. Based on these records, the ALJ concluded that although Plaintiff had alleged a history of low back pain, there was no evidence to conclude that such an impairment was severe or caused any significant functional limitations. R. 17.

Although Plaintiff argues that the ALJ erred by not finding her arthritis and lumbar degenerative disc disease to be severe impairments because she was diagnosed with such impairments, as aptly stated by another court, "[t]he mere diagnosis of [an impairment] . . . says nothing about the severity of the condition." Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988); see also Sellers v. Barnhart, 246 F. Supp. 2d 1201, 1211 (M.D. Ala. 2002) ("A diagnosis alone is an insufficient basis for a finding that an impairment is severe.") Furthermore, as the Commissioner correctly points out and as discussed above, there is no evidence in the record to suggest that Plaintiff was ever diagnosed with these conditions. Indeed, as discussed above, neither Dr. Kulkarni or Dr. Giannini diagnosed Plaintiff with arthritis or lumbar degenerative disc disease. The Court also notes that the state agency physicians, who reviewed the record evidence, did not diagnose Plaintiff with either of these conditions. R. 485, 521.

16

Although the burden on Plaintiff is mild to show that an impairment is severe at the second step of the sequential evaluation process, it cannot be said that Plaintiff has met this burden when there is no evidence in the record to show that Plaintiff was ever diagnosed with arthritis or lumbar degenerative disc disease, much less any evidence indicating that these conditions were severe or had an impact on her ability to work. Accordingly, the Court finds that the ALJ correctly did not include arthritis and lumbar degenerative disc disease among Plaintiff's severe impairments, and this argument fails to provide a basis for remand.[6]

### 3. Assessment of Plaintiff's Obesity

Finally, the Court turns to Plaintiff's argument regarding the ALJ's assessment of the limiting effects of her obesity. Plaintiff's argument appears to be twofold. First, Plaintiff argues that the ALJ erred in failing to consider the combined effects of Plaintiff's obesity along with her arthritis and lumbar degenerative disc disease.[7] Second, Plaintiff argues that the ALJ failed to take into account the effects of her obesity in light of her high Body Mass

---

[6]The Court is of course aware of Plaintiff's argument in her reply brief that the record should have been developed with respect to the effects of Plaintiff's arthritis and lumbar degenerative disc disease. (See doc. no. 12, p. 5). Plaintiff is correct in noting that the ALJ has the duty to fully and fairly develop the record. See Graham v. Apfel, 129 F.3d 1420, 1422-23 (11th Cir. 1997). However, Plaintiff's argument essentially puts the cart before the horse. Indeed, it cannot be said that the ALJ failed to develop the record with respect to the effects of arthritis and lumbar degenerative disc disease on her ability to work when, despite Plaintiff's argument to the contrary, there is no evidence in the record to demonstrate that she was even diagnosed with either of these conditions. Accordingly, the Court rejects Plaintiff's argument that the ALJ failed to develop the record in this regard.

[7]Plaintiff's brief is not clear as to whether she is arguing that the ALJ erred in not considering her obesity in combination with her arthritis, lumbar degenerative disc disease, or both. However, given the references to both, the Court assumes *arguendo* that Plaintiff is arguing that the ALJ should have considered her obesity in combination with both conditions.

Index ("BMI") of 65.4.[8] (Pl.'s Br., pp. 14-15). In response, the Commissioner argues that the ALJ properly assessed Plaintiff's obesity and took into account the limiting effects of her obesity as indicated by her BMI. (Comm'r.'s Br., pp. 22-24).

To begin, the Court notes that the parties do not dispute that Plaintiff suffers from obesity, and the ALJ included obesity as one of Plaintiff's severe impairments. R. 15. In support of her arguments regarding the ALJ's treatment of her obesity, Plaintiff points to Social Security Ruling ("SSR") 02-1p, which stands for the proposition that because Plaintiff's weight fell within the applicable definition of obesity, her obesity should be considered, along with other impairments, because it can cause further degradation of Plaintiff's physical capacity, especially in the presence of certain other impairments. See SSR 02-1p.

Specifically, SSR 02-1p recognizes that "[o]besity is a risk factor that increases an individual's chances of developing impairments in most body systems. It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal system." Accordingly, SSR 02-1p further instructs that an ALJ should assess the effect that obesity has on exertional, postural, and social functions, as well as "the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." Id. Furthermore, "[t]he combined effects of obesity with other impairments may be greater than might be expected without obesity." Id.

---

[8]BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters. See SSR 02-1p.

However, as with Plaintiff's argument that the ALJ failed to adequately develop the record with respect to the effects of arthritis and lumbar degenerative disc disease on her ability to work, Plaintiff's argument that the ALJ failed to consider these impairments in combination with her obesity (as required by SSR 02-1p) essentially puts the cart before the horse. Indeed, as discussed at length above, there is no evidence in the record demonstrating that Plaintiff was ever diagnosed with either of these conditions. Indeed, with respect to any arthritis, while Dr. Giannini noted that Plaintiff's difficulties in moving her elbows, shoulders, and fingers were consistent with arthritis of an unknown type, he specifically noted that it still had to be determined whether arthritis was the cause of these problems. R. 281. However, there is nothing in the record to suggest that any diagnosis was ever made. With respect to any lumbar degenerative disc disease, x-rays performed by Dr. Kulkarni in 2002 showed only mild degenerative changes and normal disc spaces, and Dr. Kulkarni did not include lumbar degenerative disc disease as one of Plaintiff's diagnoses. R. 470-72. Furthermore, while Dr. Kulkarni noted during a 2005 consultative examination that there were some restrictions on Plaintiff's lumbar spine due to her obesity, again, Dr. Kulkarni did not diagnose her with lumbar degenerative disc disease. R. 448.

Furthermore, Plaintiff has failed to cite to any evidence in the record demonstrating that any arthritic condition or problem with her lumbar spine limited her RFC beyond that found by the ALJ. Indeed, the ALJ's RFC determination took into account the fact that Plaintiff's severe impairment of obesity precluded her from ever climbing ladders, ropes, or scaffolding. R. 19. The ALJ further found that Plaintiff was limited to no more than 2 ½ hours of reaching overhead "because of her combined obesity and shoulder impingement."

19

Id. However, Plaintiff has pointed to nothing in the record demonstrating that the limitations that the ALJ put on Plaintiff's RFC do not adequately account for the effects any arthritic condition or issues with her lumbar spine would have on her RFC. As Plaintiff was never diagnosed with arthritis or lumbar degenerative disc disease and there is nothing in the record to support any further limitations on her RFC, the Court finds that the ALJ did not err by failing to consider the effects of these conditions along with her obesity. Accordingly, this argument also fails to provide a basis for remand.

Finally, the Court addresses Plaintiff's argument that the ALJ failed to properly assess Plaintiff's obesity in light of her extreme BMI. More specifically, Plaintiff appears to be arguing that the ALJ did not consider how extreme her obesity was in making his RFC determination. As noted above, Plaintiff represents in her brief that her BMI is 65.4. (Pl.'s Br., p. 14). According to SSR 02-1p, "[t]he Clinical Guidelines recognize three levels of obesity. Level I includes BMIs of 30.0-34.9. Level II includes BMIs of 35.0-39.9. Level III, termed "extreme" obesity and representing the greatest risk for developing obesity-related impairments, includes BMIs greater than or equal to 40." In this case, Plaintiff's BMI would place her in the Level III "extreme" obesity category. However, as acknowledged in SSR 02-1p, while BMI describes the extent of obesity, it "do[es] not correlate with any specific degree of functional loss." SSR 02-1p. Thus, Plaintiff's argument that the ALJ erred in failing to specifically mention Plaintiff's BMI in making a determination about her RFC is without merit. In any event, the state agency physicians specifically considered Plaintiff's high BMI and nevertheless opined that Plaintiff could perform medium work. R. 487. Notably, the ALJ adopted these opinions, with the additional limitation that Plaintiff was

precluded from ever climbing ladders, ropes, or scaffolding, specifically because of her obesity. R. 19, 21. Thus, it cannot be said that the ALJ ignored Plaintiff's BMI when determining what limitations on her RFC were warranted because of her obesity. Furthermore, Plaintiff has pointed to nothing in the record to demonstrate that her extreme BMI would have any further limiting effects than the ones already accounted for by the ALJ. Accordingly, this argument also fails to provide a basis for remand.

### IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 26th day of May, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE